due to him from the defendant, being a solicitor, and was to account with him at the end of every term. The defendant demurred. This court allowed the demurrer nisi causa. Demurrer affirmed and the bill dismissed." Blackstone says that the fees of counsel are given, not as locatio vel conductio, but as quiddam honorarium; not as a salary or hire, but as a mere gratuity which a counsellor cannot demand without doing wrong to his reputation (Peake, N. P. 122); and therefore counsellors are never required to give receipt for their fees.

Mr. Key and Mr. Law, contra.

Although a summary remedy is given for the legal fees of an attorney, yet that does not deprive him of his remedy by action at common law. Attorney's fees in England may be recovered in assumpsit. And in 1 Harris, Entries, 117, is a declaration in assumpsit by an attorney at law for the taxable fees. The law, as laid down by Blackstone, respecting counsellor's fees, has never been adopted in Maryland; certainly never as to the services of a physician; and in England they rest on the same ground,—a quiddam honorarium. Whenever there is a moral obligation, and an express promise to pay, the cause of action is complete, and upon the general principles of the common law the action ought to be sustained. This court has decided that an attorney at law is not bound to argue a cause before the jury, as counsel, for the legal attorney's fee.

THE COURT (MORSELL, Circuit Judge, contra) was of opinion that the fee as counsellor could not be recovered at law; and (THRUSTON, Circuit Judge, contra) that the legal attorney's fee could be recovered in assumpsit.

Verdict for plaintiff for $70, the amount of his taxable fees as attorney for the defendant in several suits.

LAW (FOYLES v.). See Case No. 5,024.

## Case No. 8,128.

### LAW v. LAW.

[3 Cranch, C. C. 324.] [1]

Circuit Court, District of Columbia. May Term, 1828.

EQUITABLE ASSETS—LAND PARTIALLY PAID FOR—JUDGMENT LIEN.

The proceeds of the sale of an equitable title to land, are equitable, not legal assets.

[Cited in Sawyer v. Morte, Case No. 12,401.]

In equity. The case was submitted to the court upon the following statement. Mr. John Law, in his lifetime, bought a lot on Pennsylvania avenue, in Washington, at public sale, to be paid for by instalments. Some were paid, but not all; and although he built upon the lot, and lived in the house, he never received a deed for it; but his assigns will receive one as soon as the last instalment is paid. The question was whether the proceeds of the sale of the lot in the hands of the trustee, under a decree of this court upon a creditor's bill, were legal or equitable assets; and consequently whether the judgment creditors were to be paid before those by simple contract or specialty. See 2 Fonbl. Eq. 401, in notes, and Sharpe v. Earl of Scarborough, 4 Ves. 538.

CRANCH, Chief Judge. We are of opinion that the proceeds of the sale of Mr. J. Law's equitable interest in the lot of land, in the hands of the trustee who made the sale, are equitable, not legal assets, inasmuch as the legal estate never was in him; and therefore it is not like the case of a mortgagor who has an equity of redemption; and who, upon the mortgage-money being paid, is reinvested with the legal estate without any reconveyance from the mortgagee. It is said that a judgment creditor has a right to redeem the mortgage, and by paying the mortgage-money, the legal estate reverts to the mortgagor, so that the judgment is a legal lien upon the lands, subject to the mortgage, as in the case of Sharpe v. Earl of Scarborough, cited above.

THRUSTON, Circuit Judge, absent.

LAW (RAY v.). See Cases Nos. 11,591 and 11,592.

## Case No. 8,129.

### LAW v. SCOTT.

[3 Cranch, C. C. 295.] [1]

Circuit Court, District of Columbia. May Term, 1828.

INSOLVENCY—LIABILITY FOR COSTS IN SUIT PENDING AT TIME OF INSOLVENCY.

An insolvent debtor who has been discharged under the insolvent act [2 Stat. 237], is not liable for the costs of a suit pending at the time of his discharge.

[This was an action at law by the administrator of John Law against Alexander Scott.] The defendant was brought in upon a ca. sa. for costs in a suit which was pending at the time of his discharge under the insolvent act.

THE COURT (THRUSTON, Circuit Judge, doubting) ordered the defendant to be discharged under the tenth section of the act for the relief of insolvent debtors within the District of Columbia.

[See Case No. 12,537.]

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Hon. William Cranch, Chief Judge.]

LAW (SCOTT v.).  See Case No. 12,537.

LAW (SLOO v.).  See Cases Nos. 12,956–12,-958.

## Case No. 8,130.

### LAW v. STEWART et al.

[3 Cranch, C. C. 411.] [1]

Circuit Court, District of Columbia. Dec. Term, 1828.

PROMISSORY NOTE—ACCOMMODATION INDORSEMENT—CO-SURETIES—DISTRESS FOR RENT—CONVEYANCE OF GOODS IN TRUST BY TENANT.

1. The maker and indorser of a promissory note made and indorsed to be discounted for the accommodation of a third person, are not in the usual course of mercantile transactions co-sureties; and the indorser is not bound to contribute with the maker in paying the note, unless there was some previous agreement to that effect.

2. Goods conveyed in trust to indemnify the landlord and his indorser against their responsibility upon a note made by the landlord, and indorsed by a third person, for the accommodation of the tenant, and left upon the premises by the consent of the landlord, are not liable to his distress for rent accruing after the deed of trust while the third person remains liable as indorser of the note.

Bill in equity, to charge, with the rent due from Robert Bailey to Mr. Law, the funds in the hands of Mr. Ingle, arising from the sale of goods conveyed in trust by Mr. Bailey to Mr. Ingle, to indemnify Mr. Law (the plaintiff) and General Stewart (the defendant) for any loss they might sustain by reason of certain notes made by Mr. Law, indorsed by General Stewart, and discounted for the use of Bailey. The goods, at the date of the deed of trust, were in the possession of Bailey in Mr. Law's house, of which Bailey was tenant; no rent being then due. After the notes were protested, Mr. Law ordered Mr. Ingle, who was his general agent, to distrain those goods for rent; which he did, and sold them, either under the distress or the deed of trust. General Stewart forbade him to pay the proceeds to Mr. Law on account of the rent, contending that the deed of trust was a prior lien, and the goods were upon the premises with the permission of Mr. Law, for the security of himself and General Stewart against the notes. The proceeds of the sales of the goods were not sufficient to pay either the rent or the notes, much less to pay both. Mr. Law, in his bill, also claims of General Stewart one half of what he, Mr. Law, has been compelled to pay upon the notes; averring that, upon Bailey's request, he, Mr. Law, and the defendant, Stewart, "did consent so to aid the said Bailey," that is, by indorsing Bailey's note. The bank, however, would not discount a note with Bailey's name upon it; but offered to discount a note made either by Mr. Law, or General Stewart, and indorsed by the other. Whereupon a note for $2,000 was made by Mr.

Law, payable to and indorsed by General Stewart, and discounted at the Patriotic Bank for the use of Bailey; afterwards a like note for $1,000 was made and indorsed, and discounted at the Bank of Washington, also for the use of Bailey, who made a deed of trust of the goods in the house to Mr. Ingle; which recites, that "whereas the said Thomas Law has become principal in a certain note, for the use of the said Bailey, and Philip Stewart has indorsed, as surety of the said Thomas Law, according to the usual mode of carrying on business at the Patriotic Bank." "And whereas the said Bailey is desirous of indemnifying and saving harmless the said Thomas Law and Philip Stewart against all suits, damages," &c., "in consequence of their becoming principal and indorser, as aforesaid," &c. &c. And the trust is "to pay and indemnify the said Thomas Law and Philip Stewart, the drawer and indorser of the said note," the money, damages, and costs, &c., which they may have paid or suffered, &c., "by reason of drawing and indorsing said note." The answer of Stewart denies that there was any agreement or understanding between him and Mr. Law, to contribute by moieties, or in any other way, in any loss that might be sustained. The answer of Mr. John P. Ingle, which was admitted as evidence, says, that he "cannot say, of his own knowledge, that it was understood between the parties, that the drawer and indorser should be equally responsible for the payment of the notes," but that such was his belief from all that had passed; and that "he always regarded them as joint securities for the debt of Bailey." This is the whole evidence in the cause upon this point.

CRANCH, Chief Judge. The court is clearly of opinion that, under the circumstances stated in the bill and answer, Mr. Law has no equitable claim to have his rent first satisfied out of the trust fund. The deed of trust created a prior lien; and the goods were upon the premises with Mr. Law's consent, for the purposes of the trust. As the trust fund has proved insufficient to pay the notes, the question arises, whether General Stewart is liable to contribute to make up the balance due upon them. According to the usual course of mercantile transactions he is not. In order to make him so, there must have been an agreement, or an understanding amounting to an agreement, to that effect. The bill does not aver any such agreement or understanding, although it prays relief to that extent. The answer denies any such agreement or understanding. This denial is strongly corroborated by the terms of the deed of trust, and by the facts stated by General Stewart, in answer to an allegation in the bill, that, upon one of the renewals of the note, the defendant, Stewart, became the drawer, and Mr. Law the indorser. Throughout the whole deed of